William H. Tuttle, Appellant, v. Fred Forsberg et al., Defendants. Hertz Drivurself Stations, Inc., Appellee.

Gen. No. 43,781.

504

Opinion filed May 20, 1947. Released for publication June 9, 1947.

Owens & Owens, of Chicago, for appellant; Thomas L. Owens, of Chicago, of counsel.

Eckert & Peterson, of Chicago, for appellee; A. R. Peterson, Owen Rall and Burnham M. Fisk, all of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

William H. Tuttle, plaintiff, sued Hertz Drivurself Stations, Inc., a corporation, and Fred Forsberg, individually and as agent for said corporation, for damages he sustained when he was struck by a bullet discharged from a gun by defendant Forsberg. The case was tried by the court and a jury and at the conclusion of plaintiff's evidence the trial court, upon motion of defendant Hertz Drivurself Stations, Inc., directed the jury to find that defendant not guilty. At the same time, *upon motion of plaintiff,* a juror was withdrawn as to defendant Forsberg and the cause was continued generally as to him. Plaintiff appeals from the judgment entered upon the directed verdict.

The amended complaint alleges that Forsberg, individually, and as agent for defendant Hertz Drivur-

self Stations, Inc. (hereinafter called defendant), negligently discharged the gun. It also alleges that Forsberg, individually, and as agent for defendant, wilfully, wantonly and maliciously discharged the gun.

The following are the material facts in the case: On May 1, 1943, one Stewart Hamilton rented an automobile from defendant corporation and at the same time signed a form of application required by defendant, and pursuant to the agreement contained therein he took out a Chevrolet sedan from the Central Station of defendant at 9 West Kinzie street, at 6:09 P. M. on the said date. By the terms of the agreement he was to return the automobile on May 2, 1943, and he did return it on that date. For the use of the automobile defendant made a charge of $6.50; it also claimed that Hamilton had damaged the automobile to the extent of $203.50 and it made a charge against him in that amount. Defendant credited Hamilton with $10 that he had deposited with it at the time he took out the sedan and claimed that he owed it a balance of $200. Plaintiff called Fred Forsberg, defendant, as an adverse witness under Section 60 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. He testified that he was a police officer of the City of Chicago and was assigned to the Shakespeare avenue police station; that on May 1 he reported for work at 11:45 P. M. and that he and his police partner, Harry Jensby, left the station at five minutes after 12 o'clock in their regular police squad car; that they went east on Fullerton avenue and as they were approaching Damen avenue they received a police call to come to 2667 Milwaukee avenue and they reached that place approximately four minutes after the call and found it to be a "Hertz Rent-a-Car place"; that when they arrived there the door was locked but after knocking somebody opened it and they went in; that he there saw Blanche Michna, the night manager of the place, and Stewart Hamilton; that Miss Michna said, " 'This is Mr. Ham-

ilton,' he had come in to rent a car''; that Hamilton had already rented a car from defendant's downtown place on West Kinzie street and had not returned it; that Hamilton then said he had returned the car, and Miss Michna, after calling a telephone number, said, ''The car has not been returned''; that ''this man came in there about 11:00 o'clock that night and wanted to rent a car''; that as she had knowledge that he had rented a car and had not returned it she asked him to wait there, but that Hamilton ran out into the street and started to get into a cab; that she told Mr. Hoffman, who came into the place, to get Hamilton, and they both went out into the street and brought Hamilton back; that she then locked Hamilton in the office and kept him waiting for someone to come out there from the loop office; that Hamilton started a commotion and she could not wait any longer and she therefore called the police. Forsberg further testified that his partner, Jensby, asked her, ''What do you want us to do?'' and that she answered, ''I want the man locked up''; that Jensby then asked her, ''Who is going to sign the complaint?'' to which she answered, ''I'll find out''; that after she had talked over the telephone with somebody she said, ''Mr. Jack Sills will be at the station to sign the complaint''; that as she said that Hamilton ran out the door and ran north on Milwaukee avenue; that they had no warrant of any kind for Hamilton's arrest; that he followed Hamilton out and chased him down Milwaukee avenue on the east side of the street to Sawyer avenue; that he, the witness, fired a shot in the air and commanded Hamilton to halt; that he was running north on Milwaukee avenue on the east side of the street when he fired the first shot; that Hamilton kept running and he followed him and chased him down Milwaukee avenue 150 to 200 feet; that ''I fired a shot at his legs in an attempt

to stop him''; that at the time he fired the second shot he was about 200 feet beyond Sawyer avenue and Hamilton was then 125 feet in front of him; that Hamilton then ran about 50 feet farther and into a hallway, and that as he approached Hamilton the latter said, ''You got me right''; that he took Hamilton down Milwaukee avenue toward 2667 Milwaukee avenue and when they got to about Sawyer avenue someone tapped him, the witness, on the shoulder and said a man was hurt, or shot, at the corner; that he then told his partner to take care of Hamilton and he went back and saw plaintiff lying on the southeast corner of Spaulding and Milwaukee avenues and took him in a squad car to the Belmont hospital. Upon cross-examination Forsberg testified that when he entered defendant's place he told Hamilton that they were City police officers; that Hamilton was sober, and when he stated that he had returned the car they asked Miss Michna if she was sure that he had not returned the car and she stated that she would call the office again and find out, and after doing so she stated that they said the car had not been returned; that prior to the time that Hamilton ran out of the office neither he nor his partner had said anything to Hamilton about arresting him; that the revolver he fired was police equipment. Plaintiff had been employed as an elevator operator by the Chicago Tribune for twenty-two years and on the night in question he was walking north on Milwaukee avenue at Sawyer avenue with Mrs. Miller, a friend, when something struck him in the leg and he fell to the sidewalk. He remained in the hospital for nine weeks; his leg was badly shattered, and about four or five days after he was taken to the hospital an operation was performed upon his leg, and he wore a cast for five weeks. Mrs. Miller testified that after plaintiff was shot Forsberg stated that he was the man who shot him.

Plaintiff contends that the court erred in directing a verdict for defendant at the close of plaintiff's evidence because there was sufficient evidence in the record to show that Forsberg, when he discharged his revolver, was not only acting as an individual but as "the agent or servant of defendant." Plaintiff insists that the evidence shows clearly that Hamilton had not committed any crime or misdemeanor although he might be civilly liable to defendant because the automobile was damaged while in his possession. Plaintiff contends that when Miss Michna said to the officers, "I want the man locked up," that statement amounted to "an implied request to take any and all steps necessary to complete the arrest," and that the shooting of plaintiff by Forsberg was a natural and proximate result of her "express request" to the officers. We are forced to disagree with plaintiff's contention. Upon the oral argument counsel for plaintiff stated that he had found no case where the facts were similar to the facts in the instant case, but he insisted that under the general principles of law enunciated in *Schramko v. Boston Store of Chicago*, 243 Ill. App. 251, the question of the alleged agency of Forsberg was one for the jury to pass upon and determine. The *Schramko* case is not comparable to the instant one upon the facts. There the plaintiff, a minor, alleged false arrest and imprisonment, false accusations that she had stolen a pair of bracelets, conversion by the defendant of a pair of bracelets belonging to her, and that the defendant, through its servant, had committed an assault upon her. The trial court directed a verdict for the defendant and the Appellate court was called upon to pass upon the propriety of that action. In the *Schramko* case it appears that the defendant had a contract with the McGuire & White Detective Agency. Under its terms the Agency assigned to defendant's premises one Charles Sullivan,

a special officer, and it was his duty to prevent thieves from operating in the defendant's store, and his duties were confined to that store. In the performance of his duties he acted under instructions of the defendant's executives. Sullivan arrested the plaintiff, in the defendant's store, and forcibly took her to the office of the defendant's superintendent and there told the superintendent that the plaintiff had taken some jewelry from defendant's store, and that her purse was full of jewelry. Sullivan testified that it was his custom "to take such persons to the superintendent's office of the defendant." After the defendant's superintendent and Sullivan had finished a lengthy questioning of the plaintiff and the superintendent had refused a request of the plaintiff that she be allowed an opportunity to prove by the defendant's saleslady that she had purchased the bracelets, they practically forced her to sign a statement, and Sullivan then took her through the defendant's store and to the door of the premises, where he told her to never come to the Boston Store again or he would arrest her. It appeared, also, that the plaintiff, Schramko, was absolutely innocent of the charge that Sullivan and the superintendent had made against her. The argument of the defendant in the Appellate court, that there was no evidence to show that Sullivan was acting as an agent of the defendant, was an idle one, and the Appellate court, in effect, so held. In the instant case, Forsberg and Jensby were regular police officers of the City of Chicago and had no connection of any kind with defendant, and the latter had no power to control or direct their actions. Forsberg was under no duty or obligation to accede to the request of Miss Michna to lock Hamilton up. When Miss Michna said to the officers, "I want the man locked up," Forsberg's partner, Jensby, very properly said, "Who is going to sign the complaint?" and she answered, "Mr. Jack Sills will be at the station to sign the complaint." The

argument of plaintiff's counsel that when Miss Michna stated to the officers that she wanted Hamilton locked up, Forsberg, because of that statement, acted as the agent of defendant when he recklessly and illegally fired the shots, seems far-fetched, indeed, and it is certainly not supported by the law. Under the facts, the conduct of Forsberg in firing the shots was wanton and illegal. "While an officer, generally, may use a deadly weapon, even to the extent of taking life, if necessary to effect the arrest of a felon, for the reason that the safety of the public is endangered while such felon is at large, the rule is that except in self-defense an officer may not use a deadly weapon or take life to effect an arrest for a misdemeanor, whether his purpose is to kill or merely stop the other's flight. This is true even though the offender cannot be taken otherwise." (*People v. Scalisi,* 324 Ill. 131, 147, where the authorities supporting the above rule are cited.) This wholesome and necessary rule of law applied to the situation that confronted Forsberg when he pursued Hamilton and fired the shots, one of which struck plaintiff. It is unfortunate that a few police officers have a false conception of the power of their office and sometimes exercise their duties in an arbitrary and illegal manner.

While it is regrettable that an innocent third person was injured by the conduct of Forsberg, it would be a strange rule of law that would make defendant liable to plaintiff for the wild and illegal conduct of Forsberg. It must be noted that Miss Michna's statement that she wanted Hamilton locked up was made before he ran out of the place and that she made no request or suggestion that Forsberg pursue and arrest Hamilton.

The direction of the verdict for defendant was proper and the judgment of the Superior court of Cook county must be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.